*Rainford G. Bartlett v. Portfolio Recovery Associates, LLC*, No. 64, September Term 2013, and *James Townsend v. Midland Funding, LLC*, No. 76, September Term 2013, Opinion by Greene, J.

**SMALL CLAIM ACTIONS – JUDGMENT ON AFFIDAVIT – ASSIGNED CONSUMER DEBT CASES**

In pursuing a judgment on affidavit, involving a small or large claim, a debt buyer plaintiff must produce certain documents, as contemplated by Maryland Rule 3-306(d), sufficient to pass muster under the business records exception. Once a small claim action is contested and proceeds to a trial on the merits, the parties are not constrained by the Rules of Evidence, as contemplated by Maryland Rule 3-701.

Circuit Court for Baltimore City
*Bartlett v. PRA*, Case No. 24-C-13-001323
*Townsend v. Midland*, Case No. 24-C-13-001033
Argued: March 10, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Nos. 64 and 76
September Term, 2013

RAINFORD G. BARTLETT

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC

JAMES TOWNSEND

v.

MIDLAND FUNDING, LLC

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Greene, J.
Adkins and McDonald, JJ., concur and dissent.
Watts, J., concurs.

Filed: May 19, 2014

In these consolidated "debt buyer" small claim actions,[1] we must determine whether the plaintiffs are permitted to satisfy their respective burdens of proof to establish liability and damages on the basis of hearsay evidence. Both cases originated in the District Court of Maryland sitting in Baltimore City. The plaintiffs filed small claim actions for money damages and demanded judgment on affidavit at the time of filing the complaint commencing the actions. Md. Rule 3-306 ("Judgment on Affidavit"); Md. Rule 3-701 ("Small Claim Actions"). The defendants filed timely notices of intention to defend, pursuant to Md. Rule 3-307. Rule 3-306, which addresses judgments on affidavit, was amended in 2011 to include special provisions related to cases involving assigned consumer debt ("debt buyer cases"). *See* One Hundred Seventy-First Report of the Standing Committee on Rules of Practice and Procedure, 6-9 (July 1, 2011). Rule 3-307(e) requires that a defendant file a timely notice of intention to defend to avoid, on the date set for trial, the court's determination of liability and assessment of damages based on the plaintiff's ex parte proof. In other words, timely filing of a notice of intention to defend entitles the defendant to a trial on the merits.

The intersection between Rules 3-306 and 3-701 involves two competing interests.

---

[1] "Debt buyer cases" refer to debt collection actions filed by a plaintiff who is not the original creditor. For a more thorough discussion of the debt buying industry and debt buyer cases, see Peter A. Holland, *The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases*, 6 J. Bus. & Tech. L. 259 (2011). We granted separate petitions for certiorari in *Bartlett v. Portfolio Recovery Assoc.*, 432 Md. 466, 69 A.3d 474 (2013) and *Townsend v. Midland Funding, LLC*, 433 Md. 513, 72 A.3d 172 (2013). Because of the common issues of law and fact, we have consolidated these cases for the purpose of this opinion.

First, Rule 3-306, as amended in 2011, is designed to raise the bar for plaintiff debt buyers who desire to obtain a judgment on affidavit by requiring them to establish a prima facie case on the basis of evidence that would satisfy the business records exception to the hearsay rule. For example, if the consumer debt is an unpaid credit card balance, the plaintiff's evidence must show that the plaintiff owns the debt sued upon and that the defendant debtor owes that debt. Second, small claim actions, by definition, shall be "informal" and the rules of evidence are not applicable to these proceedings, in order to enable all parties to adequately participate in the proceedings without the benefit of counsel.

With these principles in mind, we address the following questions:[2]

1. Does the evidentiary standard under Md. Rule 3-306(d), which contemplates that the documents submitted to support a judgment on affidavit pass muster under the business records exception, apply to a contested small claim proceeding?

---

[2] We have rephrased these questions for organization and clarity. The questions posed by Petitioners, respectively, in their Petitions for Certiorari are as follows:

Bartlett asks:

Did the trial court err in a small claims collection action brought by a debt buyer when it admitted hearsay evidence and testimony from a witness who did not have personal knowledge of the matters about which he testified given that the legislative history of newly enacted Rule 3-306 provides that a debt buyer must prove its case with evidence that would pass muster under the business records exception to the hearsay rule?

Townsend asks:

Did the trial court err in a small claims collection action brought by a debt buyer when it allowed a debt buyer to prove its case by merely submitting an affidavit of an individual not employed by the original creditor along with unauthenticated documents and data of the original creditor, given that the legislative history of newly enacted Rule 3-306 provides that a debt buyer must prove its case with evidence that would pass muster under the business records exception to the hearsay rule?

2

2. Did the trial courts abuse their discretion when they considered business records and hearsay evidence in entering judgment for the plaintiffs in the present cases?

3. Did the trial courts commit clear error when they found in favor of the Plaintiffs in the present cases?

We shall hold that in pursuing a judgment on affidavit, involving a small or large claim, a debt buyer plaintiff must produce certain documents, as contemplated by Rule 3-306(d), sufficient to pass muster under the business records exception. Once a small claim action is contested and proceeds to a trial on the merits, the parties are not constrained by the Rules of Evidence, as contemplated by Rule 3-701.[3]

## I. INTRODUCTION

Generally, in debt buyer cases, the debts sued upon arise from consumer credit, such as credit card accounts and other unsecured debts. In the typical debt buying situation, a debtor has an account with a large bank or credit card company (the "original creditor"), and at some point the debtor ceases to make payments on the account. Although the original creditor may intend to collect on the delinquent account, in cases where the amount owed is

---

[3] The dissenting opinion in this case asserts that "[i]t is not self-evident why there would be a lesser standard of proof when the allegations of the complaint are contested and a trial must be held at which the plaintiff still bears the burden of proof." Dissent slip op. at p. 2. The dissenting opinion overlooks, however, the difference between the amendment to Rule 3-306 which heightened the pleading requirements for a judgment on affidavit only, and the inherent informal nature of a contested small claim action. In a small claim trial on the merits the trial judge, as the gatekeeper, determines the reliability and probative value of the evidence introduced by the parties, under circumstances where the Rules of Evidence are not applicable.

3

relatively small or unlikely to be paid without collection efforts, the original creditor may "charge off"[4] that account. In other words, the original creditor may not desire to prosecute a claim against the debtor because it deems the debt "uncollectible." A "debt buyer" can buy these "charged-off" debts from the original creditor at a low price, often mere pennies on the dollar, and often in bulk, and then go about collecting the account balance from the debtor.

In Maryland, many debt buyers file their collection actions in the District Court, seeking a judgment on affidavit pursuant to Rule 3-306. According to one study, in 99% of debt collection cases surveyed, the debt buyer plaintiff obtained a judgment against a defendant debtor without a trial. *See* Peter A. Holland, *Junk Justice: A Statistical Analysis of 4,400 Lawsuits Filed by Debt Buyers*, 26 Loy. Consumer L. Rev. 179, 187 (2014). Similar studies have found that many debt buyer plaintiffs lack adequate proof and obtain improper uncontested judgments as a result, leading to calls for substantial debt collection reform in the United States. *See, e.g.*, U.S. Fed. Trade Comm'n, *Repairing a Broken System: Protecting Consumers in Litigation and Arbitration* (2010).

In response to this growing problem, in 2011, this Court's Standing Committee on Rules of Practice and Procedure ("the Rules Committee") proposed amendments to Rule 3-306, to become effective January 1, 2012. The Rules Committee's 171st Report explained that "[t]hese amendments [to Rule 3-306 were] designed to address a problem that has received national attention . . . , namely, the flood of thousands of judgment by affidavit

---

[4] "'Charge off' means the act of a creditor that treats an account receivable or other debt as a loss or expense because payment is unlikely." Md. Rule 3-306(a)(1).

4

cases filed in the District Court by companies that purchase, usually in bulk and with little supporting documentation, consumer debt that has been charged off by the original creditor." Specifically, the Rules Committee explained:

> The major thrust of the proposed amendments is in a new section (d), which deals specifically with claims arising from assigned consumer debt. With respect to those claims, (1) the affidavit must contain averments or be accompanied by documents that (i) more adequately establish the existence and identification of the debt and the plaintiff's ownership of the debt and (ii) provide specific information if the account was charged off, other information if the account was not charged off, particular information if the claim is based on a future services contract, and information regarding the licensure of the plaintiff debt buyer, and (2) subject to an exception, if there was a document evidencing the terms and conditions to which the consumer debt was subject, a certified or authenticated copy of that document must be attached.

Accordingly, the Rule as amended was intended to raise the requirements for debt buyer plaintiffs to prove their claim before the trial judge grants a judgment on affidavit. It is this Rule and subsequent amendment, adopted by the Court, that is the primary subject of the instant appeals.

## II. FACTS

### A. *Bartlett v. Portfolio Recovery Associates*

Respondent Portfolio Recovery Associates, LLC ("PRA") filed a small claim action in the District Court, sitting in Baltimore City, on October 3, 2012, to recover $2,897.88 against Petitioner Rainford G. Bartlett ("Bartlett"), arising originally from a delinquent credit card account with Chase Bank USA, N.A. ("Chase"). Bartlett's account became delinquent after he failed to make monthly payments or honor special payment arrangements offered to

him by Chase. Bartlett's purchases on his Chase credit card were in excess of the $2500 limit by January 2009, at which time a 90 day payment delinquency notice was mailed to his home as part of his monthly credit card statement. From February to October 2009, Bartlett made several $40 monthly payments to Chase under a special payment program. After Bartlett's failure to make any payments after October 2009, Chase charged-off Bartlett's account. In June 2011, PRA purchased Bartlett's delinquent account as part of a package of debts sold directly to it by Chase.

Along with its complaint, PRA filed a form affidavit and Assigned Consumer Debt Checklist, and attached three exhibits. Exhibit One was entitled "Proof of Existence of the Debt or Account, Rule 3-306(d)(1)," and consisted of Chase monthly credit card account statements bearing Bartlett's name, address, and original account number that reflected credit card charges, payments, finance charges and late fee charges on the account. Exhibit Two was entitled "Proof of the Plaintiff's Ownership, Rule 3-306(d)(3)" and consisted of a copy of the Bill of Sale memorializing the June 28, 2011 sale of delinquent accounts from Chase to PRA and an excerpt from the Final Data File referenced in the Bill of Sale and printed from the electronic records PRA received from Chase when it purchased Bartlett's account. Exhibit Three was titled "Account Charge Off Information, Rule 3-306(d)[(6)]" and consisted of PRA's Statement of Account and Interest Worksheet.

Subsequently, Bartlett filed a notice of intention to defend, and following a District Court trial on the merits, judgment was entered in favor of PRA. Bartlett filed a timely

notice of appeal pursuant to Rule 7-112, and his appeal was heard *de novo* in the Circuit Court for Baltimore City on April 24, 2013. Prior to the commencement of trial on the merits in that court, the following colloquy, relevant to this appeal, took place between Bartlett's counsel and the trial judge concerning the applicability of the Rules of Evidence and Md. Rule 3-306 to the present case:

> [Trial Judge]: Is this a small claim action?
>
> [Petitioner's Counsel]: Yes, Your Honor, it is.
>
> [Trial Judge]: So, the Rules of Evidence don't apply, do they?
>
> [Petitioner's Counsel]: Well, we have a different view of that, Your Honor. All of the Rules of Evidence may not apply, except for the basic rule of competency. And competency, at its heart, requires evidence that's reliable, and can be supported by firsthand knowledge.
> . . .
>
> [Trial Judge]: I'm not sure it's anything goes [if the Rules of Evidence don't apply], but maybe there's an alternative here because the rules that were created earlier – I guess, last year – for affidavit judgments; one could say, even though they don't apply once we go to trial – perhaps furnish some guidelines as to what the Court of Appeals thought would be appropriate benchmarks or milestones.
>
> [Petitioner's Counsel]: You know, your Honor is absolutely right, and this is an argument we make all the time.
>
> [Trial Judge]: Um-hmm.
>
> [Petitioner's Counsel]: That at trial the standard of proof in a purchased debt account, can be no less than the standard of proof under 3-306, to obtain an Affidavit of Judgment.
> . . .
>
> [Trial Judge]: [Having sat through all the rule making] proceedings, it's my

recollection – and I apologize for taking up all this time – but you know part of the concern [of] the Rules Committee, and I emphasize "part of the concern," but certainly, a major part of the concern was to establish a standard for judges to make these determinations on affidavit judgments because at that point, there's nobody opposing the judgment.

[Petitioner's Counsel]: The defendant is not present, Your Honor.

[Trial Judge]: Right.  Now, here, the defendant is present.

[Petitioner's Counsel]: And the standard can be no less –

[Trial Judge]: Well, I –

[Petitioner's Counsel]: – for that very reason.

[Trial Judge]:  – don't know about that.  I'm saying, if the standard was adopted for the purpose of protecting someone who's not there –

[Petitioner's Counsel]: Right.

[Trial Judge]: – maybe it doesn't apply.
. . .

[Trial Judge]: I think what makes sense, is for me to hear all the testimony, and then assess what I think is reliable and probative.  And I may be talking about admissibility at that point; I may be talking about weight at that point, but I think it will be faster if we do it that way.

Once the judge proceeded with trial, PRA offered into evidence all the attachments to the original complaint, as well as an Affidavit of Sale from Chase memorializing the sale of Bartlett's debt to PRA, as well as additional credit card statements from January 2009 to May 2010.  David Sage, PRA's custodian of records, testified about the documents included as exhibits at trial, his knowledge of the business practices of PRA, that he was taught how Chase maintains their records, and the process by which PRA purchased the portfolio of

8

delinquent accounts from Chase. Bartlett also testified at the merits trial, and confirmed that

he had a Chase credit card and that he previously received monthly credit card statements at

the mailing address reflected in the statements. He further indicated that he recalled

receiving a letter from PRA stating that it now owned his Chase account and that he had to

go to court for the money he owed Chase. Bartlett testified that at one time, the balance on

his account was "$2,800 and some dollars." Following the conclusion of the trial on the

merits, the trial judge made his evidentiary rulings and entered judgment in favor of PRA,

stating, in pertinent part:

> I think ultimately that the rule says that it depends upon the amount of the claim. And given the amount of the claim, that we're under 3-701. . . . So ultimately, as I say, I am going to admit Plaintiff's Exhibits 1 and 2. And I have, as I say, scrutinized them and compared them to what Rule 3-306(d) requires. And I don't have any question that the Plaintiff has proved by a preponderance of the evidence the existence of the account. The Chase records, and I've determined that they are admissible, do reflect, in accordance with 3-306(d)(1), the existence of the account and the balance. And as has been averted [sic] to, it is corroborated by Mr. Bartlett's candid testimony. And I appreciate his candor. That he did have an account with Chase, and they did send him statements, and the balance was something like what was claimed here today. The more difficult question, it seems to me, is the proof of Plaintiff's ownership. And I've gone back and forth on this, but ultimately I conclude that the Bill of Sale does comply with 3-306(d)(3). . . . So, for those reasons, I find that the Plaintiff has proven by a preponderance of the evidence that it is entitled to recover having proven both the existence of the debt and its ownership of the debt. And I will enter judgment in favor of the Plaintiff for $2,789.18.

Thereafter, Bartlett filed a petition for certiorari,[5] which this Court granted on July 3, 2013.

_____

[5] "[T]he only review available to a party disappointed by the judgment of the circuit court [after appeal *de novo* in that court] is by way of petition for certiorari to this Court[.]"

(continued...)

9

*Bartlett v. Portfolio Recovery Assoc.*, 432 Md. 466, 69 A.3d 474 (2013).

## B. *Townsend v. Midland Funding, LLC*

Respondent Midland Funding, LLC ("Midland") filed a small claim action in the District Court, sitting in Baltimore City, on December 22, 2011,[6] to recover $1,905.21 plus interest against Petitioner James Townsend ("Townsend"), arising from an unpaid balance on a consumer credit account that Midland purchased from Chase. In support of its claims, Midland attached to its complaint the Affidavit of Ashley Lashinski, a legal specialist with access to the account records of Midland Credit Management, Inc., the account servicer for Midland, stating the amount of the debt owed by Townsend, that Midland is the owner of the debt, and that the account records are maintained in the regular course of business. In addition, Midland attached a copy of a redacted "Bill of Sale" from Chase to Midland indicating that Midland purchased certain accounts from Chase, which included an express warranty as to the accuracy of the documents, but did not specify which accounts were transferred to Midland during this transaction. Midland also attached photocopies of credit card statements from Chase to Townsend, showing the balance due on the account, itemized

---

(...continued)
*Shum v. Gaudreau*, 322 Md. 242, 245, 587 A.2d 248, 249 (1991). *See also* Md. Code (1973, 2013 Repl. Vol.), § 12-305 of the Courts and Judicial Proceedings Article; Md. Rule 8-302(b).

[6] Midland filed its Complaint against Townsend prior to January 1, 2012, the effective date of the amendment to Rule 3-306. From the record, however, it appears that both the District Court and Circuit Court relied on Rule 3-306 as amended in 2011 in deciding the case.

transactions and previous payments made on the account, and Townsend's name and address.

Townsend was served with a copy of the complaint and filed a notice of intention to defend on January 23, 2012. A merits trial was to be held in the District Court on November 7, 2012. Counsel for both parties appeared at trial, however Townsend was not present. At trial in the District Court, Midland argued that judgment should be entered in favor of Midland based on the affidavit and supporting documents attached to the complaint, which it offered as evidence at trial. To the contrary, Townsend argued that the case should be dismissed because Midland had provided insufficient identification of his account and the documents submitted by Respondent were inadmissible as evidence to prove its claim. The District Court judge issued an Opinion & Order on January 16, 2013, granting judgment in favor of Midland. In its Opinion & Order, the court determined that (1) the account statements were admissible because they were sufficiently authentic, based on the corporate logo and that they were issued to Townsend's address, and because Rule 3-306 contemplates the use of third party business records, *i.e.*, records from the original creditor; and (2) the affidavit plus the account statements from the original creditor established by a preponderance of the evidence that Townsend's account was transferred to Midland.

Thereafter, Townsend filed a timely notice of appeal to the Circuit Court for Baltimore City pursuant to Md. Rule 7-112. A *de novo* trial was held in the Circuit Court on May 2, 2013. Counsel for both parties appeared at the *de novo* trial, however Townsend did not appear and no witnesses were called at trial. Midland submitted as "Exhibit 1" the

documents attached to the original complaint. Townsend objected to the admission of the documents based on Rule 3-306, hearsay, and lack of personal knowledge. He further argued that because Rule 3-701 cross-references Rule 5-101, the rules regarding competency still apply even in small claims, and in this case Midland needed a competent witness to introduce documents, which it failed to do because the affiant lacked personal knowledge. Midland responded that the Rules of Evidence do not apply in this small claim case, and therefore the documents are admissible in evidence for the trial judge to consider. At the conclusion of counsel's arguments, the judge announced that the court would hold the matter *sub curia* and issue a written opinion.

The Circuit Court filed its Order on May 15, 2013, entering judgment for Midland. In its Order, the court made the following findings:

1. Pursuant to Md. Rules 3-701 and 7-112(d), the Maryland Rules of Evidence (Title 5) do not apply to these small claim proceedings. See Rule 5-101. This [c]ourt has determined to receive and consider the Affidavit of Ashley Lashinski (Plaintiff's Exhibit 1) pursuant to the instruction and guidance of Md. Rule 3-306.

2. With the contents and attachments of [Midland]'s Exhibit 1, over [Townsend]'s objection(s), [Midland] has proven its claim by a preponderance of evidence. Specifically, the Affidavit conforms to the requirements of Md. Rule 3-306 in this "debt buyer" case.

3. [Midland] was "assigned all the rights, title and interest" to [Townsend]'s credit card account with Chase Bank. The account is a consumer debt account at issue as defined in Md. Rule 3-306(a)(3). [Midland] is not the "original creditor" but its claim arises from consumer debt (Rule 3-306(d)).

4. The Affidavit of Ashley Lashinski is expressly found to have established:

12

a. The existence of [Townsend]'s account and debt by certifying photocopies of several monthly statements showing payments on the account by [Townsend].  Rule 3-306(d)(1);

b. The existence of an unpaid balance due on [Townsend]'s credit card account with Chase Bank in the amount of $1,905.21, without any claim for interest or fees.  Rule 3-306(d)(2)(b);

c. [Midland]'s ownership of [Townsend]'s consumer debt upon transfer of the ownership of that debt by the original creditor, Chase Bank, to [Midland], on June 30, 2011, according to the certified copy of the Bill of Sale attached to the Affidavit.  Rule 3-306(d)(3);

d. The Ashley Lashinsky Affidavit (with account documents) properly includes: the name of the original creditor (Chase Bank); [Townsend]'s full name as it appeared on the original credit card account; the last four digits of [Townsend]'s social security number; the original account number; the nature of the credit card account; and the itemization of money claimed and payments credited from [Townsend].  Rules 3-306(d)(4, (d)(7)[.]

Townsend thereafter filed a petition for certiorari with this Court, which we granted on August 14, 2013.  *Townsend v. Midland Funding*, 433 Md. 513, 72 A.3d 172 (2013).

## III. STANDARD OF REVIEW

In the present cases, we discuss three standards of review.  The three standards of review coincide with the three questions before this Court.  Our first inquiry, whether the Rules of Evidence apply in debt buyer small claim proceedings, is a question of law. It is well established that pure conclusions of law are reviewed *de novo*.  *See Nesbit v. Government Employees Ins. Co.*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004); *J.L. Matthews, Inc. v. Md.-Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 92, 792 A.2d 288, 300 (2002).  Accordingly, we shall review *de novo* the question of whether Md. Rule 3-306(d)

13

requires documentary evidence to pass muster under the business records exception in a small claim proceeding once the case is contested.

Next, we review the Circuit Court judges' "evidentiary rulings" involving weighing the reliability and probative value of the evidence to determine its admissibility pursuant to the abuse of discretion standard. *See Dehn v. Edgecombe*, 384 Md. 606, 628, 865 A.2d 603, 616 (2005); *McCormack v. Bd. of Educ. of Baltimore Cnty.*, 158 Md. App. 292, 302, 857 A.2d 159, 164 (2004) ("When the trial judge's ruling involves a weighing, we apply the more deferential abuse of discretion standard."). Because, as we shall explain, the Rules of Evidence do not apply in a small claim proceeding, the admissibility of evidence in such circumstances is left to the sound discretion of the trial judge.[7] *See Goodman v. Commercial Credit Corp.*, 364 Md. 483, 491, 773 A.2d 526, 531 (2001) ("Necessarily, when there is no hard and fast rule governing the situation, in arriving at a decision, the trial judge must exercise his or her judicial discretion . . . ."). A trial court only "abuses its discretion when it acts without reference to any guiding principles or rules of law or where no reasonable person would take the view adopted by the court." *Matoumba v. State*, 390 Md. 544, 552, 890 A.2d 288, 293 (2006); *Bern-Shaw Ltd. P'ship v. Mayor of Baltimore*, 377 Md. 277, 291,

---

[7] We note that some types of evidentiary rulings are pure questions of law, for which *de novo* review is appropriate. Indeed, "a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*." *Gordon v. State*, 431 Md. 527, 536, 66 A.3d 647, 652 (2013) (citations omitted). Here, however, where Rule 3-701 provides that the Rules of Evidence do not apply in small claim actions, the District Court judges and Circuit Court judges, on *de novo* appeal, had discretion to weigh whether the evidence was reliable and probative in determining its admissibility.

833 A.2d 502, 510 (2003) (noting "that absent a showing of abuse of [the trial judge's] discretion, its ruling will not be disturbed on appeal") (quotations omitted). We point out that "a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." *North v. North*, 102 Md. App. 1, 14, 648 A.2d 1025, 1031-32 (1994).

Finally, we review the judgments of the trial courts for clear error. As stated in our rules, an appellate court "will not set aside a judgment of the trial court on the evidence unless clearly erroneous[.]" Md. Rule 8-131(c); *Marwani v. Catering by Uptown*, 416 Md. 312, 318-19, 6 A.3d 928, 931 (2010) (reviewing a *de novo* trial in the Circuit Court on direct appeal from the District Court, and stating that "[t]he Court of Appeals will set aside the judgment of a court based on the factual findings of that court only when those findings are clearly erroneous."). "The appellate court must consider evidence produced at the trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed." *Ryan v. Thurston*, 276 Md. 390, 392, 347 A.2d 834, 835-36 (1975). Ultimately, we conclude that the judges conducting trials *de novo* in the present cases neither erred nor abused their discretion in entering judgment in favor of Respondents, respectively.

## IV. DISCUSSION

### A. Small Claims

Historically, the purpose of small claims courts is to provide greater access to justice

for the public by allowing claims for small amounts of money to be litigated inexpensively and efficiently. *See* Eric H. Steele, *The Historical Context of Small Claims Courts*, 6 Am. B. Found. Res. J. 293 (1981) (providing a broad historical background and analysis of small claims courts in the United States). To achieve this goal, small claim cases in Maryland proceed "informally." That is, "the rules of evidence and procedure in small claims cases are simplified to make it easier for individuals to represent themselves." Maryland Courts, *Small Claims: How to File a Small Claim in the District Court of Maryland*, http://www.courts.state.md.us/district/forms/civil/dccv001br.pdf (last visited April 1, 2014).

By statute, small claims are defined as claims for monetary judgments not exceeding $5,000, and are under the exclusive jurisdiction of the District Court. Md. Code (1973, 2013 Repl. Vol.), § 4-405 of the Courts and Judicial Proceedings Article. Title 3 of the Maryland Rules governs civil procedure in District Court. Chapter 700 of Title 3 deals with "special proceedings," which includes small claims. Specifically, Md. Rule 3-701 governs "Small Claim Actions." Rule 3-701(a) specifies and explains that "[t]he rules of this Title apply to small claim actions, except as provided in this Rule." Nothing in Rule 3-701 exempts small claims from Rule 3-306 regarding judgments on affidavit, so the procedures outlined therein certainly apply in small claim actions as well as large claim actions. Conduct of trials for small claim actions is governed under subsection 3-701(f), however. It provides that "[t]he court shall conduct the trial of a small claim action in an informal manner. Title 5 of these rules [(Rules of Evidence)] does not apply to proceedings under this Rule." Subsection (f)

16

is plain and unambiguous: the rules of evidence do not apply to a trial in a small claim proceeding.[8]

Under Md. Rule 7-112(d)(2), a judgment entered in the District Court is subject to an appeal to be heard *de novo* in the circuit court. Like a small claim action in the District Court, the *de novo* trial in the circuit court "shall [be] conduct[ed] . . . in an informal manner, and Title 5 of these rules does not apply to the proceedings," Rule 7-112(d)(2), "other than those [rules] relating to the competency of witnesses." Md. Rule 5-101(b). Accordingly, the Rules of Evidence codified in Title 5 of the Maryland Rules, except for the rules of competency, do not apply to trial in small claim proceedings, either in the District Court or on "*de novo* appeal" in the circuit court, provided the claim does not exceed the jurisdictional

---

[8] Petitioners argue that the cross-reference to Rule 5-101 under Rule 3-701 means that the rules of competency still apply to small claim actions, and that a competent witness must have personal knowledge pursuant to Rule 5-602. We agree that Rule 5-101 states that the rules of competency apply in small claim actions under Rule 3-701 and appeals under Rule 7-112. Md. Rule 5-101(b)(4). "The rules of competency" referred to in Rule 5-101(b) include Rule 5-601 (General rule of competency), Rule 5-605 (Competency of judge as witness), and Rule 5-606 (Competency of juror as witness). Petitioners' argument that the competency rules require a witness in a small claim action to have personal knowledge pursuant to Rule 5-602 is misplaced, however. It is well established that competency is not synonymous with personal knowledge. *See Matoumba*, 390 Md. at 553, 890 A.2d at 293 (holding that "competency" as used in Rule 5-101 "refers to the traditional notion of competency, *i.e.*, that the witness has sufficient mental capacity to understand the nature and obligation of an oath and is possessed of sufficient mind and memory to observe, recollect, and narrate the things he or she has seen or heard"); *Perry v. State*, 381 Md. 138, 145, 848 A.2d 631, 635 (2004) (stating that a witness is "competent" where the witness "has sufficient capacity to observe, recollect, and recount pertinent facts and . . . demonstrates an understanding of the duty to tell the truth) (citations and quotations omitted). Accordingly, Petitioners' argument to the contrary is without merit.

amount of $5,000.

## B. Judgment on Affidavit: Rule 3-306

Maryland Rule 3-306 governs the procedure for judgment on affidavit.[9] Pursuant to Rule 3-306, a plaintiff may file a demand for judgment on affidavit with the complaint, and must provide an accompanying affidavit and supporting documents showing that the plaintiff is entitled to judgment as a matter of law. Sections (b) and (c) of Rule 3-306, as amended and recodified in 2011, codify the general requirements of the documents needed to support a demand for judgment on affidavit. Specifically, Rule 3-306(b) provides that "[i]n an action for money damages a plaintiff may file a demand for judgment on affidavit at the time of filing the complaint commencing the action. The complaint shall be supported by an affidavit showing that the plaintiff is entitled to judgment as a matter of law in the amount claimed." Subsection (c) then outlines the general requirements for an affidavit and supporting documents, applicable to all types of cases, which must be submitted along with the complaint.[10] *See Goodman*, 364 Md. at 489, 773 A.2d at 530 (stating that subsection (a),

---

[9] A judgment on affidavit is a procedure peculiar to the District Court. It is a procedure whereby the trial court enters judgment based on documents without proceeding to a trial on the merits.

[10] Specifically, newly codified Rule 3-306(c) provides that:

The affidavit shall:
(1) be made on personal knowledge;
(2) set forth such facts as would be admissible in evidence;
(3) show affirmatively that the affiant is competent to testify to the matters stated in the affidavit; and;

(continued...)

18

which is now codified as subsection (c), "prescribes the pleading prerequisites" for a judgment on affidavit).

Next, new subsection (e) provides the procedures for "subsequent proceedings," and explains how the case will proceed if the action moves beyond the demand for judgment on affidavit stage. Whether the action proceeds beyond the purview of Rule 3-306 depends on how the defendant responds. *See* Rule 3-306(e). This procedure was described in *Goodman*:

> The effect of the filing of, or the failure to file, a notice of intention to defend is the subject of [Rule 3-306(e)]. Subsection [(e)(1)] requires the plaintiff to appear in court on the trial date prepared for a trial on the merits. It also prescribes what happens when the defendant fails to appear in court on the trial date, 'the court may proceed as if the defendant failed to file a timely notice of intention to defend.' When the defendant does not file a notice of intention to defend, subsection [(e)(2)] excuses the plaintiff from appearing for trial on the trial date, permits the court to determine liability and damages on the basis of the complaint, affidavit, and supporting documents and, if they are sufficient to entitle the plaintiff to judgment, requires the court to grant the demand for judgment on affidavit.

*Goodman*, 364 Md. at 489-90, 773 A.2d at 530-31 (footnote omitted). In other words, if the

---

(...continued)
(4) include or be accompanied by:
(A) supporting documents or statements containing sufficient detail as to liability and damages, including the precise amount of the claim and any interest claimed;
(B) if interest is claimed, an interest worksheet substantially in the form prescribed by the Chief Judge of the District Court;
(C) if attorneys' fees are claimed, sufficient proof evidencing that the plaintiff is entitled to an award of attorneys' fees and that the fees are reasonable; and
(D) if the claim is founded upon a note, security agreement, or other instrument, the original or a photocopy of the executed instrument, or a sworn or certified copy, unless the absence thereof is explained in the affidavit.

defendant fails to file a notice of intention to defend pursuant to Rule 3-307,[11] the trial judge

evaluates the merits of the plaintiff's case based solely on the complaint, affidavit, and

accompanying documents. The Rule also provides that the court may proceed as if no notice

of intention to defend was filed if the defendant fails to appear at trial, despite filing a timely

notice of intention to defend. *See* Rule 3-306(e)(1). Under those circumstances, then, if the

---

[11] Md. Rule 3-307 provides:

(a) To be Filed with Court–When Service Not Required. The defendant, including a counter-defendant, cross-defendant, and third-party defendant, shall file with the court a notice of intention to defend which may include any explanation or ground of defense. When the defendant is represented by an attorney, the notice shall be served in accordance with Rule 1-321. A defendant not represented by an attorney need not serve the notice on any party.

(b) Time for Filing.

    (1) Generally. Except as provided by subsection (b)(2) of this Rule, the notice shall be filed within 15 days after service of the complaint, counterclaim, cross-claim, or third-party claim.

    (2) Exceptions. A defendant shall file the notice within 60 days after being served if the defendant is:

        (A) served outside of the State;

        (B) a person who is required by statute of this State to have a resident agent and who is served by service upon the State Department of Assessments and Taxation, the Insurance Commissioner, or some other agency of the State authorized by statute to receive process; or

        (C) the United States or an officer or agency of the United States served pursuant to Rule 3-124 (m) or (n).

(c) Identity of Attorney. If the defendant is represented by an attorney, the notice shall contain the attorney's name, office address and telephone number.

(d) Notice to Parties. When the defendant files a notice pursuant to this Rule, the clerk promptly shall mail notice of the filing to other parties.

(e) Effect of Failure to File Notice. If a defendant fails to file a timely notice of intention to defend pursuant to this Rule, the court, on the date set for trial, may determine liability and assess damages based on ex parte proof by the plaintiff, unless the defendant appears and the court is satisfied that the defendant may have a defense to the claim. In that event, the court shall proceed with trial or, upon request of the plaintiff, may grant a continuance for a time sufficient to allow the plaintiff to prepare for trial on the merits.

trial judge is satisfied that the documents establish the merits of the plaintiff's claim and the defendant's liability, the judge may grant judgment on affidavit in favor of the plaintiff.

On the other hand, if the defendant files a timely notice of intention to defend under Rule 3-307, he or she is entitled to a trial on the merits and Rule 3-306(e)(1) expressly requires the plaintiff to "appear in court on the trial date prepared for a trial on the merits." The matter then proceeds to trial pursuant to the applicable rules. For small claim actions, the trial is conducted pursuant to Rule 3-701. As required by Rule 3-701(f), "[t]he court shall conduct the trial of a small claim in an informal manner[, and] Title 5 of these rules does not apply" (except for the rules regarding competency of witnesses). Therefore, once the small claim action proceeds to trial, the parties are not constrained by the Rules of Evidence.

Rule 3-306 in Debt Buyer Cases

The 2011 amendment to Rule 3-306 added a special provision relating to debt buyer cases. *See* One Hundred Seventy-First Report of the Standing Committee on Rules of Practice and Procedure, 8 (July 1, 2011) ("The major thrust of the proposed amendments is in a new section (d), which deals specifically with claims arising from assigned consumer debt."). The new subsection (d) requires debt buyer plaintiffs to provide additional documents with its complaint and affidavit to satisfy the "Assigned Consumer Debt Checklist." Rule 3-306(d) provides in pertinent part:

> **(d) If Claim Arises from Assigned Consumer Debt.** If the claim arises from consumer debt and the plaintiff is not the original creditor, the affidavit also shall include or be accompanied by (i) the items listed in this section, and (ii) an Assigned Consumer Debt Checklist, substantially in the form prescribed by

21

the Chief Judge of the District Court, listing the items and information supplied in or with the affidavit in conformance with this Rule. Each document that accompanies the affidavit shall be clearly numbered as an exhibit and referenced by number in the Checklist.

(1) Proof of the Existence of the Debt or Account. Proof of the existence of the debt or account shall be made by a certified or otherwise properly authenticated photocopy or original of at least one of the following:
(A) a document signed by the defendant evidencing the debt or the opening of the account;
(B) a bill or other record reflecting purchases, payments, or other actual use of a credit card or account by the defendant; or
(C) an electronic printout or other documentation from the original creditor establishing the existence of the account and showing purchases, payments, or other actual use of a credit card or account by the defendant.

In essence, subsection (d) provides "heightened pleading and evidentiary requirements" for the documents submitted in all assigned consumer debt cases. *See* Jan I. Berlage, Ronald S. Canter & William M. Rudow, *Nuts and Bolts of Collection Law* 65 (2012). In order to succeed by judgment on affidavit in a debt buyer case, the plaintiff must submit the documents required by the Rule. Specifically, the plaintiff must produce a "certified or otherwise properly authenticated photocopy or original" document proving the existence of the debt. Md. Rule 3-306(d). Based on the language of the Rule and a comment by Judge Wilner, Chairman of the Rules Committee, during this Court's adoption of the amendment to Rule 3-306, requiring a "certified or otherwise properly authenticated" document means that those documents must satisfy the business records exception to the hearsay rule. *See* Transcript of Rules Committee Meeting July 1, 2011, at 94-95 ("What we mean by certified or authenticated copy, is what would pass muster under the business records exception to the

hearsay rule."). As expressed in the Rules Committee's Report, the purpose of the 2011 amendment was to prevent debt buyers from obtaining a judgment without properly serving debtors and to make it more difficult for debt buyers to prove their case when it is uncontested, *i.e.*, when judgment on affidavit is the preferred procedure. Therefore, the amendment to Rule 3-306 not only set forth a heightened pleading requirement in that specific documents must now be presented in order for a debt buyer plaintiff to obtain a judgment on affidavit, but also in that those specific documents must pass muster under the business records exception to the hearsay rule.

To be clear, Rule 3-306 is a rule of procedure, not a rule of evidence. In assigned consumer debt cases, subsections (b), (c), and (d) describe the burden on the plaintiff to prepare and submit the complaint, demand for judgment on affidavit, and required supporting documentation in order to be successful in obtaining a judgment on affidavit. As we have explained, the next step in the case depends on whether the defendant files a notice of intention to defend. *See* Rule 3-306(e). If the defendant fails to respond by filing a timely notice of intention to defend, or the defendant files a timely notice of intention to defend but fails to appear at trial,[12] the trial judge will evaluate the merits of the debt buyer plaintiff's

---

[12] Alternatively, in a case where the trial judge denies plaintiff's request for judgment on affidavit and the defendant fails to appear at trial, the case could proceed as a trial upon default. *See* Rule 3-509(a) (prescribing the procedures "[w]hen a motion for judgment on affidavit has been . . . denied by the court, and the defendant has failed to appear in court at the time set for trial"). Like Rule 3-306, Rule 3-509 was amended in 2011 to include special provisions for debt buyer cases to require the trial court to "consider the requirements set forth in Rule 3-306(d)" before granting a default judgment. Rule 3-509(a) provides:

(continued...)

23

case based on the affidavit and accompanying documents under the purview of Rule 3-306(d).  If the judge is satisfied that the plaintiff met its burden, the court may then grant judgment on affidavit in favor of the plaintiff.

On the other hand, if the defendant files a notice of intention to defend and contests the case, the case proceeds to a trial on the merits.  In a small claim action, as here, the trial proceeds pursuant to Rule 3-701.  As required by Rule 3-701(f), the "court shall conduct the trial of a small claim in an informal manner[, and] Title 5 of these rules does not apply" (except for the rules regarding competency of witnesses).  Therefore, once the small claim action moves beyond the demand for judgment on affidavit stage, the plaintiff will have to present evidence at trial to prove that the defendant owes the debt to the plaintiff, but will not

---

(...continued)

**(a) Requirements of Proof.** When a motion for judgment on affidavit has not been filed by the plaintiff, or has been denied by the court, and the defendant has failed to appear in court at the time set for trial:

(1) if the defendant did not file a timely notice of intention to defend, the plaintiff shall not be required to prove the liability of the defendant, but shall be required to prove damages; except that for claims arising from consumer debt, as defined in Rule 3-306 (a)(3), when the plaintiff is not the original creditor, as defined in Rule 3-306 (a)(5), the court (A) may require proof of liability, (B) shall consider the requirements set forth in Rule 3-306 (d), and (C) may also consider other competent evidence;

(2) if the defendant filed a timely notice of intention to defend, the plaintiff shall be required to introduce prima facie evidence of the defendant's liability and to prove damages. For claims arising from consumer debt, as defined in Rule 3-306 (a)(3), when the plaintiff is not the original creditor, as defined in Rule 3-306 (a)(5), the court shall consider the requirements set forth in Rule 3-306 (d) and may also consider other competent evidence.

24

be constrained by the Rules of Evidence in doing so. This is true for all small claims, including a debt buyer case.[13] Therefore, in a debt buyer small claim action, once the case is contested, the plaintiff need not conform its proffer to the Rules of Evidence. Specifically, in this context, hearsay evidence need not pass muster under the business records exception in order to be admissible.[14] Notwithstanding the pleading requirements of Rule 3-306(d) as they relate to the grant of a judgment on affidavit, the evidence must satisfy the trier of fact (in a small claim proceeding in District Court or in Circuit Court pursuant to a *de novo*

---

[13] Now, in cases filed by debt buyer plaintiffs on or after January 1, 2012, to obtain judgment on affidavit, the complaint and supporting documents must comply with Rule 3-306(d). If the case is a small claim and is contested by the defendant, and the plaintiff still wishes to rely on the submitted documents that comply with Rule 3-306(d) and the business records exception to the hearsay rule, the court's reliance on those documents would not be inconsistent with this opinion.

[14] To be sure, the trial judge must still weigh the reliability and probative value of hearsay evidence before admitting it in the small claims context. Small claim proceedings are analogous to other situations where the formal Rules of Evidence do not strictly apply; in those proceedings it is well-established that hearsay evidence must still be reliable to be admissible. *See In re Billy W.*, 387 Md. 405, 434, 875 A.2d 734, 751 (2005) (concluding that "in permanency planning hearings when the Rules of Evidence are not strictly applied, the trial court must evaluate whether evidence proffered for admission is sufficiently reliable and probative prior to its admission"); *Motor Vehicle Admin. v. McDorman*, 364 Md. 253, 262, 772 A.2d 309, 314 (2001) ("It is hornbook law that hearsay evidence, if reliable, is admissible at administrative proceedings. . . . Moreover, not only is hearsay evidence admissible in administrative hearings in contested cases but such evidence, if credible and of sufficient probative force, may indeed be the sole basis for the decision of the administrative body."); *Baker v. State*, 332 Md. 542, 558, 632 A.2d 783, 790 (1993) (stating that "while the strict Rules of Evidence do not apply at a sentencing proceeding, unreliable hearsay is inadmissible"). Whether hearsay evidence or not, a trial judge in the small claims context must ensure that the evidence is sufficiently reliable and probative before accepting it. Ultimately, then, the evidence presented must be sufficient to establish by a preponderance of the evidence that the plaintiff owns the debt sued upon and that the defendant owes the outstanding debt.

appeal) that it possesses sufficient indicia of reliability.

As we previously noted, the purpose of Rule 3-701's informality requirement is to make small claim actions accessible for all, whether represented by counsel or self-represented. To require otherwise would make it substantially more difficult for self-represented defendants to participate in debt buyer proceedings such as these. If we were to require that evidence introduced at a small claim merit trial must satisfy a hearsay exception, this would call for the unrepresented public to be familiar with, and apply, the Rules of Evidence. This would be in contradiction to the very purpose underlying small claim proceedings, *i.e.*, that they be conducted in an informal manner to simplify the proceedings for self-represented parties. This Court should not draw a distinction in the contested small claims context between an institutional plaintiff and an unsophisticated defendant, and therefore, we will not require only one of the parties to introduce into evidence documents that satisfy the business records exception. Accordingly, the admissibility of evidence in a small claim action, including debt buyer cases, is left to the sound discretion of the trial judge, who is able to weigh, in an informal manner, the reliability and probative value of the evidence before him or her, as well as the arguments and defenses presented by the parties.

## V. MERITS

In the instant cases, the defendants both filed a notice of intention to defend, and each case proceeded to a trial on the merits. Either the defendant or defendant's counsel appeared at the separate trials. The trial judges, respectively, rendered judgment after hearing

arguments and accepting evidence on the merits.  Thus, the prevailing plaintiffs did not

obtain judgments on affidavit under Rule 3-306, but rather, prevailed under the procedural

rules governing small claim actions (Rule 3-701 in District Court and Rule 7-112 in Circuit

Court pursuant to a *de novo* appeal).  Because the Rules of Evidence do not apply in the

instant situations and because of the informal nature of a small claim proceeding, a trial court

is tasked only with weighing the reliability and credibility of the evidence before it, and then

considering such evidence  on a discretionary basis when making its determination.  *See*

*Goodman*, 364 Md. at 491, 773 A.2d at 531 ("Necessarily, when there is no hard and fast rule

governing the situation, in arriving at a decision, the trial judge must exercise his or her

judicial discretion and the resulting decision is reviewed for the soundness and

reasonableness with which the discretion was exercised."); *In re Billy W.*, 387 Md. at 434,

875 A.2d at 751 (holding that, where the Rules of Evidence were not strictly applied, the trial

judge "must evaluate whether evidence proffered for admission is sufficiently reliable and

probative prior to its admission"); *cf. Della Rata v. Dyas*, 414 Md. 556, 583-84, 996 A.2d

382, 398 (2010) (quoting *State v. Smith*, 374 Md. 527, 533-34, 823 A.2d 664, 668 (2003)

("Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks

proper for the fact finder.")).  We review the judge's weighing of the evidence here for an

abuse of discretion.

To address the contention that the trial judges abused their discretion in considering

some of the evidence before them, we note that a significant portion of the evidence before

27

the respective courts consisted of bank records submitted by Respondents. We recognize

generally that bank records are a form of business records, and that "[t]he trustworthiness and

reliability of any business record arises from the fact that entries recording an act or event

are made in the regular course of business and it is the regular course of business to record

those entries at the time of that act or event or soon thereafter." *State v. Garlick*, 313 Md.

209, 222, 545 A.2d 27, 33 (1988) (quotations omitted) (noting that the business records

exception applies to both civil and criminal cases). This Court has recognized that bank

records, particularly when the bank has no stake in the outcome of the litigation, have a

strong indicia of reliability, *Chapman v. State*, 331 Md. 448, 459, 628 A.2d 676, 682 (1993),

so it follows that such documents could carry substantial weight with the trial court.

Moreover, it is well-established that a custodian of business records does not have to

be the custodian "who was such at the time the record was made." *Killen v. Houser*, 251 Md.

70, 76, 246 A.2d 580, 583 (1968). To be sure, "there is no requirement that the witness have

first-hand knowledge of the matter reported or that the witness actually have prepared or

observed the preparation of the report." *Dep't of Pub. Safety & Corr. Servs. v. Cole*, 342 Md.

12, 29, 672 A.2d 1115, 1123 (1996). If this were not the case, the business records exception

"would lose much of its utility and effectiveness." *Killen*, 251 Md. at 76, 246 A.2d at 583.

Because the admissibility of the evidence in these small claims cases is left to the sound

discretion of the trial judge, the outcomes in the two cases under review depends on the

reliability and credibility of the evidence presented at trial. We also review the judgments

28

rendered by the Circuit Courts for clear error.

## A. *Bartlett v. Portfolio Recovery Associates, LLC*

PRA filed its complaint against Bartlett after the effective date of the amendments to Rule 3-306(d).[15] In order to succeed on a demand for judgment on affidavit, then, the documents filed by PRA with its complaint, namely the form affidavit and Assigned Consumer Debt Checklist and supporting documents, had to comply with the heightened pleading requirements set forth in the amendment to Rule 3-306(d). Bartlett filed a timely notice of intention to defend, however; hence the case proceeded as a contested small claim action rather than as a demand for judgment on affidavit. Both the plaintiff and defendant appeared at the merit trial before the District Court judge and again at the trial *de novo* on the merits in the Circuit Court. We shall hold that the Circuit Court did not abuse its discretion and that there was no clear error in entering judgment for the plaintiff in the present case.

As detailed extensively in Section II.A. of this opinion, the evidence before the Circuit Court judge was as follows: documents including (1) an Affidavit of Sale from a Chase attorney stating Bartlett's account was sold to PRA, (2) a Bill of Sale, (3) a Final Data File, (4) Chase monthly credit card statements from January 2009 to May 2010, and (5) PRA's Account Charge Off Information; and testimony from (1) David Sage, PRA's custodian of records ("Sage"), and (2) the debtor, Rainford Bartlett.

To be sure, at a minimum, Bartlett's monthly credit card statements are considered

---

[15] PRA filed its complaint on October 3, 2012, that is, after the amendments to Rule 3-306 had become effective on January 1, 2012.

bank records. Not only do such records have a strong indicia of reliability, but the trial judge evaluated the documents before him under the "guideposts" of Rule 3-306. He stated that "one could look to the provisions of [Rule] 3-306(d) as sort of a guidepost for what the proof has to show [a]nd I've been considering the evidence in light of that." Under that standard, the judge concluded that the documents produced were in fact admissible in accordance with 3-306(d), despite the fact that they need not be admissible in accordance with this Rule in the small claims context. He elaborated that the more difficult question to satisfy was whether PRA owned the debt in question, but ultimately concluded that the Bill of Sale complied with 3-306(d) as well, and this document was also considered when making his determination. Although compliance with Rule 3-306(d) is not required in either a trial on the merits in a small claim proceeding in District Court or appeal of a small claim action to be heard *de novo* in the circuit court, there was no abuse of discretion when the Circuit Court judge considered the heightened pleading standard in order to guide his review of the evidence in this case.

Moreover, the judge noted that while he did not find some aspects of Sage's testimony persuasive, the parts of Sage's testimony that demonstrated "a more precise knowledge" of some of the data provided "was credible and persuasive, and satisfied the preponderance of the evidence test." Indeed, while Sage did not have personal knowledge of all aspects of the debt buying process he was testifying about, personal knowledge is not always necessary in this context. The judge clearly exercised his discretion when considering the reliability of such testimony. Even if the documents and Sage's testimony alone were not sufficient, the

30

addition of Bartlett's testimony was sufficient to satisfy PRA's burden of proof. The judge compared Bartlett's "candid testimony" to support facts put forth in the documents and in Sage's testimony in order to weigh their credibility. Because the judge referenced "guiding principles or rules of law" and a reasonable person could reach the same conclusion, we hold that there was no abuse of discretion in the instant case.

We shall also hold that in light of the evidence presented, there was no clear error in entering judgment in favor of the plaintiff. The court determined that Bartlett was liable for payment of the debt at issue based on the evidence before the court, which included the documents submitted by PRA and the testimony of both PRA's custodian of records and of the debtor himself. Accordingly, we shall affirm the judgment of the Circuit Court in *Bartlett v. PRA*.

## B. *Townsend v. Midland Funding, LLC*

As a threshold matter, Midland filed its complaint prior to January 1, 2012, and therefore, the heightened pleading requirements of Rule 3-306(d) as amended did not apply. Nevertheless, the judges in both the District Court trial and the *de novo* trial in the Circuit Court indicated that they considered Rule 3-306 as a guideline and further concluded that the documents satisfied the requirements of Rule 3-306 as amended in 2011.[16] In any event, as

---

[16] Because the trial judge found that the documents submitted met the requirements of Rule 3-306(d), it is reasonable to infer that she believed the records would pass muster under the business records exception. While it is not necessary to comply with the business records exception in this situation, it certainly adds to the reliability and probative value that these records would in fact be admissible as an exception to the hearsay rule.

explained below, because the action proceeded to a trial on the merits, we shall hold that the Circuit Court did not abuse its discretion in admitting the evidence offered at trial and did not commit error in entering judgment for the plaintiff after weighing the evidence in the case.

In this case, Midland filed with its complaint and demand for judgment on affidavit, (1) the Affidavit of Ashley Lashinski, legal specialist with access to account records of Midland Credit Management, Inc., the account servicer for Midland, stating the amount of the debt owed, that Midland is the owner of the debt, and that the records are maintained in the regular course of business; (2) a copy of a redacted Bill of Sale from Chase to Midland; and (3) copies of credit card statements from the original creditor showing the balance due and Townsend's mailing address. Townsend filed a notice of intention to defend and the case proceeded to a trial on the merits. Although Townsend did not attend, his counsel appeared on his behalf at the District Court trial and again at the Circuit Court trial *de novo*.

At the trial *de novo* in the Circuit Court, Midland offered as evidence the documents attached to its complaint, namely, the Affidavit of Ashley Lashinski, the "Bill of Sale" from Chase to Midland, and the photocopies of Townsend's credit card account statements. The court correctly concluded that "the Maryland Rules of Evidence (Title 5) do not apply to these small claim proceedings" and "determined to receive and consider" the evidence offered by Midland. As we have discussed, in this small claim case the admission of the evidence was within the trial judge's discretion. We conclude that it was not an abuse of

discretion for the court to admit Midland's affidavit and supporting documents, where the court had "determined to receive and consider [the affidavit and supporting documents] pursuant to the instruction and guidance of Md. Rule 3-306." To be sure, a "reasonable person would take the view adopted by the trial court" and would conclude that the rulings were not "clearly against the logic and effect of facts and inferences before the court." *North v. North*, 102 Md. App. 1, 13, 648 A.2d 1025, 1031 (1994) (citations and quotations omitted). Contrary to the views espoused in the dissenting opinion in this case, it would be inappropriate for this Court to reverse the judgment of the Circuit Court simply because members of this Court would not reach the same conclusions. *See id.*

Although the signed but redacted "Bill of Sale" was not reliable evidence of the purchase of the Chase account, the Affidavit of Ashley Lashinski was sufficiently reliable evidence. Her affidavit was "based upon personal knowledge of [the] account records maintained on [Midland's] behalf" by Midland Credit Management, Inc., the account servicer. In addition, Lashinski's affidavit references Townsend's Chase account and the account number. The last four digits of that account number appear in each of the eighteen separate billing statements attached to Midland's Exhibit One and issued by Chase to Townsend. The statements show the account summary and account activity, including the payment date, new balance, past due amount, and minimum payment due. We note further that the defendant did not attend or participate in the trial. Had he participated, the judge would have had the additional benefit of any evidence the defendant wished to present.

33

Under the circumstances, however, all the judge had to consider was the plaintiff's evidence and the argument of defense counsel. Accordingly, the plaintiff should not be penalized because the defendant failed or refused to participate in the proceedings.

Townsend contends that because Ashley Lashinski's assertions are hearsay, the Circuit Court committed reversible error by admitting Exhibit One (Affidavit and supporting documents).[17] This is not correct. Hearsay evidence is admissible in small claim proceedings. A live witness at trial seems to be always preferable, but, in the context of small claims, the presence of a witness is not always necessary. The trial judge, in the exercise of his or her discretion, must weigh the reliability of the evidence in the case. We

[17] More specifically, Townsend argues that by admitting and relying on hearsay evidence in the form of an affidavit, without the opportunity to cross-examine, he was denied procedural due process. This argument is without merit. First, as to the admission of hearsay, we have noted, in the context of an administrative hearing, that "procedural due process does not prevent an agency from supporting its decision *wholly* by hearsay, if there is underlying reliability and probative value." *Maryland Dep't of Human Res. v. Bo Peep Day Nursery*, 317 Md. 573, 595, 565 A.2d 1015, 1026 (1989) (emphasis in original). In the context of small claims, where the Rules of Evidence are not applicable, the circumstances are similar. Second, as to due process, "[t]his Court has long held that procedural due process requires that litigants must receive notice, and an opportunity to be heard." *Pickett v. Sears, Roebuck & Co.*, 365 Md. 67, 81, 775 A.2d 1218, 1226 (2001). Cross-examination, on the other hand, is not a prerequisite, but instead is an additional procedural protection to be considered when the courts engage in a due process analysis. *See Bo Peep Day Nursery*, 317 Md. at 597, 565 A.2d at 1026-27 (noting that "a chance to confront and cross-examine witnesses or evidence" is one of the "different elements of the adversary process which *may* be required as part of" due process (emphasis added)). Further, we have recognized that "due process is flexible and calls only for such procedural protections as the particular situation demands." *Miserandino v. Resort Props., Inc.*, 345 Md. 43, 52, 691 A.2d 208, 212 (1997) (citations and quotations omitted). In this civil small claim case, Petitioner received adequate due process where he was served with the complaint, filed a timely notice of intention to defend, was represented by counsel, and had the opportunity to attend the merits trial before a neutral judge, even though he chose not to attend the trial.

are satisfied that the evidence before the Circuit Court judge taken as a whole, with the exception of the Bill of Sale, was sufficiently reliable for the judge to admit it, and to conclude that Midland purchased the debt and that Townsend owed a principle balance of $1,905.21 as of the date of the trial.

Finally, there was no clear error in entering judgment in favor of the plaintiff, where the court found that "[w]ith the contents and attachments of Plaintiff's Exhibit 1, over Defendant's objection(s), the Plaintiff has proven its claim by a preponderance of the evidence. Specifically, the Affidavit conforms to the requirements of Md. Rule 3-306 in this 'debt buyer' case." Although the court is not bound by the heightened pleading requirements of Rule 3-306(d) in a contested small claim proceeding, it did not err in using 3-306(d) as a guide in its disposition of this case. The trial judge expressly found that the documents presented at trial demonstrated both the existence of Townsend's debt and Midland's ownership of the debt. In light of the evidence presented, the judge's consideration of the reliability and weight of the evidence before her, and the absence of any rebuttal evidence by Respondent, who chose not to attend or testify at trial, we find no clear error on the part of the trial judge. Accordingly, we affirm the judgment of the Circuit Court for Baltimore City in both cases under review.[18]

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY**

---

[18] In light of our disposition of this case, Respondent Midland's Motion to Strike the Licensing Board's amicus curiae brief is hereby denied.

**AFFIRMED.  COSTS TO BE PAID BY PETITIONERS.**

IN THE COURT OF APPEALS
OF MARYLAND

Nos. 64 and 76

September Term, 2013

---

RAINFORD G. BARTLETT

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC

---

JAMES TOWNSEND

v.

MIDLAND FUNDING, LLC

---

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

---

Opinion by McDonald, J., concurring in the
judgment in part and dissenting in part, which
Adkins, J., joins.

---

Filed: May 19, 2014

I would decide these two appeals differently. The purchase of a debt from the original creditor and the pursuit of its collection in the District Court is a legitimate economic enterprise. But the prosecution of a collection action by a debt buyer should conform to the standards of fairness normally required by our rules and constitutions. My disagreement with the Majority arises from three considerations.

*Some Considerations in Deciding These Cases*

*Whether There are Different Standards of Proof for Summary Disposition and Trial*

The summary disposition rule in the District Court – *i.e.*, judgment by affidavit under Maryland Rule 3-306 – spells out specific requirements for the contents of affidavits in debt buyer cases.[1] These requirements were explicitly designed to satisfy the business records exception to the hearsay rule,[2] a principle that is not only codified in Maryland Rule 5-803(6), but that has long been a part of the common law as well as other statutes and rules.[3] Thus, as the Majority opinion acknowledges,[4] a debt buyer plaintiff must satisfy the business records exception to prevail if a defendant does not respond to the complaint. As the

---

[1] As the Majority opinion correctly notes, the amended version of Rule 3-306 did not technically apply to the *Townsend* case, although the parties and the courts below apparently used it as a benchmark. *See* Majority slip op. at p. 10 n.6. The amendments became effective as of January 1, 2012, while the complaint in the *Townsend* case was filed on December 22, 2011.

[2] *See* Transcript of Rules Hearing of Court of Appeals (July 1, 2011) at pp. 94-95.

[3] *See* L. McLain, Maryland Evidence (1987) at pp. 376-84.

[4] Majority slip op. at p. 22.

Majority opinion also acknowledges,[5] if the defendant files a notice of intention to defend but fails to appear for trial, the court is still to consider whether the debt buyer plaintiff has met the requirements of Rule 3-306. *See* Maryland Rules 3-306(e), 3-509(a).

Under the Majority's approach, it is only when the defendant puts the debt buyer plaintiff to its proof that the rules are relaxed for the plaintiff. It is not self-evident why there would be a lesser standard of proof when the allegations of the complaint are contested and a trial must be held at which the plaintiff still bears the burden of proof. I would not relax the normal standard of proof when the plaintiff's case depends entirely on the reliability of certain records, some of which originated with the plaintiff and some of which the plaintiff purchased from a third party, and about which there may be legitimate questions as to their trustworthiness.

*Whether Bank Records are Always Inherently Reliable*

Second, in affirming the judgments in these cases, the Majority opinion notes that this Court in *Chapman v. State*, 331 Md. 448, 628 A.2d 676 (1993), characterized bank records as having "strong indicia of reliability." Majority slip op. at p. 28. That case was a criminal prosecution in which the bank was simply a witness and had no stake in the outcome – unlike

---

[5]Majority slip op. at pp. 23-24 n. 12.

2

a collection case involving a debt allegedly owed to a bank.[6]   Indeed, this Court made just

that point in *Chapman*:

> While it is true that documents that parties prepare for the
> purpose of litigation are often suspect because of their apparent
> self-serving ends, such is not the case when a bank completes an
> affidavit of account status [in a bad check prosecution].  There
> is no enhanced motive for insincerity or fabrication under these
> circumstances.  This is not a case where a party to the litigation
> generates a document for self-serving means.... *The bank has
> neither a position to advocate nor a stake in the outcome* of a
> criminal trial.

*Chapman v. State*, 331 Md. at 464 (emphasis added) (citations omitted).

As the Federal Trade Commission has found, banks that sell debt accounts to debt

buyers often disclaim the reliability of the records and accounts that they are providing to the

debt buyer.  Federal Trade Commission, The Structure and Practices of the Debt Buying

Industry (2013) at p. 25; *see also* Holland, *Junk Justice: A Statistical Analysis of 4,400*

*Lawsuits Filed by Debt Buyers*, 26 Loyola Consumer L. Rev. 179, 193-94 & nn. 45, 50

(2014).  It seems odd to accord special reliability to those records when the business that

actually created and maintained them may have disclaimed their reliability.

In addition, in *Chapman* and in the other cases cited by the Majority opinion involving

business records, the courts appropriately qualified their holdings by noting that records that

otherwise satisfy the conditions of the business records exception are not admissible if

---

[6]*Chapman* was a prosecution for obtaining a television from a department store by
means of a bad check.  The statutory basis for admitting bank records in that case was unique
to "bad check" cases – a provision that currently is codified in Maryland Code, Criminal Law
Article, §8-104(c).

3

circumstances concerning their source or preparation indicate that they lack "trustworthiness."[7] As this Court has frequently stated, the key mechanism for testing trustworthiness in our adversary system is cross-examination.[8]

*Whether There Should be an Opportunity for Cross-Examination*

Finally, under the Majority's approach, a defendant may be precluded from any opportunity to cross-examine the plaintiff's witnesses. It is true that small claims trials under Rule 3-701 are to be conducted informally, but that does not mean that "anything goes" – in particular, that a party that has the burden of proof can avoid having any of its evidence tested through cross-examination. As the Majority opinion notes, the primary purpose of small claims courts is to provide greater access to justice. Majority slip op. at p. 15. That goal involves not only increasing the efficiency of the judicial system, but also "increasing the access of the poor to equal justice." Eric H. Steele, *The Historical Context of Small Claims Courts*, 6 Am. B. Found. Res. J. 293 (1981). Rule 3-701, and its predecessor rule,[9] was designed to permit the efficient resolution of small claims in which one or both parties were without lawyers, and thereby to make the justice system more accessible for low income

---

[7]*E.g.*, *Department of Public Safety and Correctional Services v. Cole*, 342 Md. 12, 31, 672 A.2d 1115 (1996).

[8]*See, e.g., Myer v. State*, 403 Md. 463, 477, 943 A.2d 615 (2008).

[9]Maryland District Court Rule 568.

and unrepresented parties. It was not meant to allow institutional parties to shield themselves from cross-examination.[10]

In sum, we should not decide these cases by according special reliability to the business records offered by one party to a dispute, particularly when they belong to a third party and there may be a legitimate question as to their accuracy, and certainly not without the possibility of cross-examination.[11] These considerations bring me to the same place as the Court in one case, but to a different outcome in the second case.

*Deciding These Cases*

*Bartlett*

In the trial of the *Bartlett* case, Mr. Bartlett himself was called as a witness by PRA in its own case. He conceded the existence and the amount of his debt to Chase Bank. In light of this corroboration, there is no reason to doubt the accuracy of the information set forth in the records from Chase Bank.

A representative of PRA also testified and was cross-examined concerning PRA's records in the Circuit Court. The Circuit Court itself noted that PRA's witness was present

---

[10]I agree with the statement in Judge Watts' concurring opinion that the right of cross-examination may be a fundamental element of due process in a small claims case. Concurring Opinion of Judge Watts, slip op. at 4. I disagree as to whether it can be dispensed with in these cases.

[11]This consideration would not establish different rules for institutional parties and pro se individuals, but rather is based on the nature of the evidence being proffered. Were a pro se party to purchase a debt from a third party creditor, file suit to collect it, and attempt to prove the existence and ownership of the debt on the basis of the third party's records alone without any opportunity for cross-examination of anyone, the rule should be the same.

and subject to cross-examination. Trial Transcript at p. 16 ("You have the full ability to plumb the testimony and expose whether it's based upon reliable and probative evidence, or not."). In finding that PRA had proven its ownership of Mr. Bartlett's debt to Chase Bank, the Circuit Court relied on the testimony of PRA's representative, although the Court expressed skepticism about some aspects of that testimony. *Id*. at p. 129.

In light of the corroborating evidence of the debt, it was not necessary for PRA to prove its existence and amount solely through the business records of Chase Bank. The witness sponsoring PRA's business records testified and was available for cross-examination. The conclusions drawn by the Circuit Court were not clearly erroneous. Accordingly, I would affirm the judgment of the Circuit Court, although not on the basis stated in the Majority opinion.

*Townsend*

The *Townsend* case is a different matter.

Midland appeared at trial in both the District Court and the Circuit Court *without any witnesses* and attempted to prove its case simply by submitting an affidavit and copies of various documents. The affidavit of its absent agent – Ashley Lashinski, an employee of a Midland affiliate – did not specifically identify the documents that comprised Midland's proof, perhaps because those documents differed in the two courts.[12]

---

[12] Although the same affidavit, signed by Ms. Lashinski and dated November 18, 2011, was submitted in both the District Court and the Circuit Court, an additional document was attached to the affidavit in the Circuit Court – raising the question as to what, if any, documents were attached to the affidavit when Ms. Lashinski executed it.

6

One of the key exhibits that accompanied the affidavit in both courts was a redacted "bill of sale" that purportedly documented the sale of certain debts by Chase Bank, including the debt attributed to Mr. Townsend, to Midland. This bill of sale was apparently an exhibit to a purchase and sale agreement that was not itself submitted to the courts below.[13] While the bill of sale recites statements similar to the requirements of the business records rule, it is not an affidavit, the statements are not made under oath, and it is not clear to whom those statements are to be attributed – *i.e.*, who would be cross-examined by a defendant who wished to test the truth of those assertions. In any event, the redacted bill of sale submitted with Ms. Lashinski's affidavit contained no reference to Mr. Townsend's account – or any other account, for that matter.[14]

The District Court judge noted the gap in Midland's proof – none of the records submitted in the District Court actually documented that Mr. Townsend's debt had been sold to Midland – but was willing to find that Midland had covered that gap, by a preponderance of the evidence, through a reference to Mr. Townsend's Chase account number in Ms. Lashinski's affidavit. The Circuit Court similarly relied on Ms. Lashinski's affidavit to

---

[13]Notably, the missing purchase and sale agreement is the type of document in which a bank typically disclaims the reliability of the records it provides to the debt buyer. *See* Federal Trade Commission, The Structure and Practices of the Debt Buying Industry (2013) at pp. 24-25.

[14]While Rule 3-306(d)(3) contemplates that a bill of sale may be redacted, the bill of sale should at least contain the terms of the sale and a "specific reference to the debt sued upon." Rule 3-306(d)(3), *Committee note*. Midland apparently attempted to remedy this problem by submitting an additional document with the affidavit in the Circuit Court.

conclude that Midland had satisfied the requirements of Rule 3-306[15] and proven its claim by a preponderance of the evidence. Thus, even if one accepted the proffered bank records as business records of Chase Bank simply because they contained a bank logo, they could not advance Midland's claim without the testimony of Ms. Lashinski, who did not appear at either trial and therefore was not subject to cross-examination.

The Majority opinion only briefly addresses the possibility that due process would require an opportunity to cross-examine Ms. Lashinski, citing the *Bo Peep* case for the proposition that an administrative agency may base a decision on hearsay evidence. Majority slip op. at p . 34 n.17 *citing Maryland Department of Human Resources v. Bo Peep Day Nursery*, 317 Md. 573, 565 A.2d 1015 (1989). In *Bo Peep*, the hearsay evidence consisted of certain statements made by children concerning acts of abuse allegedly committed against them. However, in contrast to this case, in *Bo Peep* the adult witnesses who introduced that hearsay into evidence were all subject to significant cross-examination at the hearing, as the *Bo Peep* opinion recounts at some length. *See Bo Peep*, 317 Md. at 586-95. Indeed, in *Bo Peep* this Court favorably contrasted the procedures in the case before it – in which there was cross-examination – with another case in which there was "no opportunity for cross examination" and the proceedings thereby lacked "fundamental fairness." *Bo Peep*, 317 Md. at 598-601 *describing Rogers v. Radio Shack*, 271 Md. 126, 314 A.2d 113 (1974). In Mr. Townsend's case, no one from Midland was available for cross-examination. If the trial of

---

[15]This may not be entirely correct – Ms. Lashinski's affidavit and attachments do not appear to contain account charge-off information or licensing information. *See* Maryland Rule 3-306(d)(6)-(8).

this case had proceeded similarly to the administrative hearing in *Bo Peep*, Ms. Lashinski (like the adult witnesses in *Bo Peep* through whom the hearsay was admitted) would have been available for cross-examination when she laid the foundation for the introduction of hearsay statements in the Midland and Chase Bank records under the business records exception.

On its face, Ms. Lashinski's affidavit raises some obvious questions that might be explored on cross-examination. Her affidavit speaks generally of her familiarity with Midland's records and makes certain assertions about amounts owed by Mr. Townsend to Chase Bank, but says nothing specifically about the bill of sale or other documents attached to her affidavit. Nor does her affidavit indicate whether Midland has records related to the account that were *not* attached to the complaint or her affidavit – *e.g.,* the purchase and sale agreement for which the bill of sale identifies itself as an "exhibit" – and whether the omitted records contain any disclaimers or other representations concerning the accounts or the records.

It may be that Ms. Lashinski could have answered any questions that Mr. Townsend's counsel might have posed in a way that advanced Midland's case. But we do not know because, without a witness to cross-examine, the defendant never had that opportunity.[16]

_____

[16]It is the opportunity for cross-examination that is critical. Ordinarily, when a party seeks to admit business records without a live witness, it must provide notice to the opposing party. *See* Maryland Rule 5-902(b). This allows the opposing party to object or to subpoena the witness itself if it wishes to cross-examine that witness. *See* L. McLain, *Self-Authentication of Certified Business Records*, 24 U. Balt. L. Rev. 27, 59-60, 72 (1994) (Maryland rule allowing admission of business records without live witness likely constitutional because of advance notice provision and provision that rule does not apply

Under the Majority's holding, an affidavit that failed to provide sufficient support for summary disposition under Rule 3-306 could be used to prevail at trial without affording the defendant any opportunity to cross-examine the affiant or other representative of the plaintiff, who has the burden of proof, about the defects in the affidavit. As federal courts have noted in two recent cases involving Midland, when the documentary evidence of a sale of a debt is incomplete, "the possibility of a debt collector attempting to collect a debt that it does not actually own, either through assignment or otherwise, is very real." *Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, 894 F.Supp.2d 1180, 1188 (D. Neb. 2012) *quoting Webb v. Midland Credit Management, Inc.*, 2012 WL 2022013 (N.D. Ill. 2012) at *5 n.8. Even if the statements in the Lashinski affidavit had been sufficient to admit all of the records under the business records exception, the defendant should have an opportunity to cross-examine a witness who establishes the prerequisites to the business records exception. Accordingly, I would reverse the judgment in the *Townsend* case and remand for a new trial.

*Summary*

It may be that, in most debt buyer cases, the defendant owes the debt and the debt buyer owns the debt. But that is not a reason to discard the normal standards of proof, forgive gaps in the debt buyer's own records, and treat certain bank records as infallible, particularly when a bank itself may have disclaimed their accuracy. It is ironic that a trial process designed to allow unrepresented lay people to find justice in the legal system, and

---

when circumstances indicate a "lack of trustworthiness"). Under the procedure approved by the Court in this case, a debt buyer plaintiff need not provide any notice that it intends to prove its case without any witnesses available for cross-examination.

10

a rule on summary disposition designed to require debt buyer plaintiffs to satisfy the business records exception to the hearsay rule, have been transformed into a streamlined debt collection process under which a sophisticated institutional litigant avoids even the possibility that its evidence will be subject to testing by cross-examination.

Judge Adkins joins this opinion.

Circuit Court for Baltimore City
Case No. 24-C-13-001323
Circuit Court for Baltimore City
Case No. 24-C-13-001033

Argued: March 10, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Nos. 64 & 76

September Term, 2013

———————————————————————

RAINFORD G. BARTLETT

v.

PORTFOLIO RECOVERY ASSOCIATES,
LLC

———————————————————————

JAMES TOWNSEND

v.

MIDLAND FUNDING, LLC

———————————————————————

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

———————————————————————

Concurring Opinion by Watts, J.

———————————————————————

Filed: May 19, 2014

Respectfully, I concur in the judgment in both cases, <u>Bartlett v. Portfolio Recovery Associates, LLC</u> and <u>Townsend v. Midland Funding, LLC</u>, but I write separately to explain my reasons.

Like the Majority, I conclude that Rule 3-306 sets forth the requirements for obtaining a judgment on affidavit, not the requirements for prevailing at a trial. Upon the filing of a timely notice of intention to defend pursuant to Rule 3-306(e)(1), the case proceeds as any other small claims action, and, pursuant to Rule 3-701(f), the District Court would conduct the trial in an informal manner, and Title 5, the Rules of Evidence, would not apply.[1] A *de novo* appeal of the District Court's decision is similarly handled in an informal manner, and the Rules of Evidence do not apply. <u>See</u> Md. R. 7-112(d)(2) ("If the action in the District Court was tried under Rule 3-701, . . . the circuit court shall conduct the trial de novo in an informal manner, and Title 5 of these rules does not apply to the proceedings."). It is undisputed that a contested small claims trial is conducted informally and the Rules of Evidence (except the Rules applicable to the competency of witnesses) do not apply.

### Bartlett

I agree that this Court should affirm the judgment of the circuit court, but not for the reasons stated in the Majority opinion. Like the Majority, I conclude that the circuit court did not err in admitting the documents included in PRA's Exhibits 1 and 2, over

---

[1]Bartlett appears to concede as much in stating: "Rule 3-306(d) technically does not apply at trial[.]" I decline Bartlett's and Townsend's invitation to consider Rule 3-306(d) "persuasive authority as to what a debt buyer must prove to obtain a judgment . . . at a contested trial[,]" as Rule 3-306(d)'s plain language establishes that Rule 3-306(d) applies only to a judgment on affidavit.

Bartlett's objection that the documents failed to satisfy Rule 5-803(b)(6). Because the Rules of Evidence do not apply in contested small claims cases, whether the documents included in PRA's Exhibits 1 and 2 were hearsay or excepted hearsay under Rule 5-803(b)(6) was simply not a determination that was before the circuit court.

The circuit court did not err in admitting PRA's Exhibits 1 and 2–which included records from the original creditor, Chase–over Bartlett's objection that Sage lacked personal knowledge of the creation and maintenance of the records. As discussed by the majority, an alleged lack of personal knowledge did not render Sage incompetent to testify or to serve as the proponent of the documents in the small claims trial, as a witness's personal knowledge is distinct from the witness's competency.

But PRA raises a point that the Majority does not address. PRA contends that, if the Rules of Evidence were applicable, under Md. Code Ann., Cts. & Jud. Proc. (1973, 2013 Repl. Vol.) ("CJP") § 10-101, in a small claims action, a sponsoring witness with personal knowledge is not required for admission of business records into evidence. I agree. If the documents at issue were deemed to be business records, a sponsoring witness's lack of personal knowledge would not be fatal to the admission of the documents. CJP § 10-101(d), concerning evidence of proof of accounts and records, provides: "The lack of personal knowledge of the maker of the written notice may be shown to affect the weight of the evidence but not its admissibility." In Bethlehem-Sparrows Point Shipyard v. Scherpenisse, 187 Md. 375, 381, 50 A.2d 256, 260 (1946), we explained that Maryland modeled its business records statute–now codified at CJP § 10-101–after the Model Act for Proof of Business Transactions, stating:

The [Maryland] Act also provides that all other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight, but not the admissibility thereof. The purpose of the Act is to put an end to narrowness in the use of the familiar rule of evidence that the person whose statement is received as testimony should speak from personal observation or knowledge, and to bring the rule of evidence nearer to the standards in responsible action outside of the courts.

(Citation omitted).

Accordingly, I agree that this Court should affirm the judgment of the circuit court, but not entirely on the grounds stated in the Majority opinion.[2]

### Townsend

As to Townsend's contention that the circuit court's admission of Lashinski's affidavit violated his right to due process because Lashinski was not available for cross-examination, in my view, this case's particular circumstances do not establish a due process violation. An appellate court reviews without deference whether a trial court violated a constitutional right. See Ellis v. Hous. Auth. of Balt. City, 436 Md. 331, 353, 82 A.3d 161, 174 (2013), reconsideration denied (Jan. 23, 2014) ("[I]n reviewing a possible violation of a constitutional right, this Court conducts its own independent constitutional analysis. We perform a de novo constitutional appraisal in light of the particular facts of the case at hand[.]" (Alterations in original) (citation and internal quotation marks omitted)).

In Rhoads v. Sommer, 401 Md. 131, 160, 931 A.2d 508, 525 (2007), this Court stated:

---

[2]Indeed, Bartlett has never even disputed the merits of PRA's claim or otherwise asserted that he did not have a delinquent credit card account.

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

(Quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

In certain cases, this Court has determined the right to cross-examination to be a fundamental part of due process. In Md. Dep't of Human Res. v. Bo Peep Day Nursery, 317 Md. 573, 597, 565 A.2d 1015, 1026-27 (1989), cert. denied sub nom. Cassilly v. Md. Dep't of Human Res., 494 U.S. 1067 (1990), an administrative appeal, this Court referred to the right to cross-examination as an "essential element[]" of due process. (Citation omitted). See also Archer v. State, 383 Md. 329, 356, 859 A.2d 210, 226 (2004) (This Court referred to the right to cross-examination as a "fundamental element[]" of due process in criminal cases. (Citation omitted)); In re Thomas J., 372 Md. 50, 65, 811 A.2d 310, 319 (2002) (This Court referred to the right to cross-examination as a "fundamental right[]" that is part of due process in juvenile cases. (Citation omitted)).

Although the right of cross-examination may indeed be determined to be a fundamental element of due process in small claims cases, I do not believe the test in Mathews, 424 U.S. at 335, compels that result in this particular case; nor do I believe that the issue is before this Court. At the *de novo* appeal in the circuit court, Townsend's counsel appeared, but did not object on the ground that he could not cross-examine Lashinski. Thus, the issue of Townsend's right to cross-examination and any alleged

- 4 -

deprivation of due process are matters that were neither "raised in [nor] decided by the [circuit] court." Md. R. 8-131(a).

If the merits were to be addressed, this case's circumstances do not warrant a finding of a due process violation. On appeal, Townsend has challenged the process and Midland's manner of proof, but he has not alleged that he is, in fact, not the debtor, or that there is an error as to the debt. Applying the Mathews test, the private interest affected is a property interest. The amount at stake in this case is $1,905.21. Although small claims actions involve smaller amounts than other civil actions for damages, admittedly, the amount at stake may constitute a considerable amount for any defendant. Here, however, other than referencing the amount, Townsend has not alleged the amount to constitute a substantial property interest. Similarly, it has not been established that the risk of an erroneous deprivation of property is high. Townsend has not alleged any circumstances such as an error in paperwork–*i.e.*, that Midland does not own the debt or the amount is incorrect–or misidentification of himself as the debtor. Thus, in this case, there is no probable value of additional safeguards necessary to prevent an erroneous result. In sum, although cross-examination may indeed be determined to be a fundamental aspect of due process in small claims cases, an analysis of this case's circumstances does not result in the conclusion that Townsend was deprived of due process.

## Conclusion

Although I agree that this Court should affirm the judgment of the circuit court in both cases, in light of the issues raised by Bartlett, Townsend, and *amici*, and those

discussed by Judge Robert N. McDonald in his concurring and dissenting opinion–most notably, the observation that the small claims trial process was designed "to make the justice system more accessible for low income and unrepresented parties" rather than to "allow institutional parties to shield themselves from cross-examination," see Concurring and Dissenting Opinion at 4-5–I would urge the Standing Committee on Rules of Practice and Procedure to investigate whether there should be changes to the Maryland Rules concerning the level and type of proof in assigned consumer debt small claims contested trials.